

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| CORT BUSINESS SERVICES CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> ALL-BUSINESS SYSTEMS & DESIGN, INC., JAMES CRIBB, an individual, BRIAN MARKWOOD, an individual <br><br> Defendants. | Civil Action File No. <br><br> __1:14CV327 LMB/TCB__ <br><br> **INJUNCTIVE RELIEF REQUESTED** <br><br> **JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

CORT Business Services Corporation ("CORT" or "Plaintiff"), by and through undersigned counsel, brings the following Verified Complaint for injunctive and other relief against Defendants All-Business Systems & Design, Inc., James Cribb and Brian Markwood (collectively "Defendants") for and in connection with Defendants': (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq.*; (2) misappropriation of CORT's trade secrets, Va. Code Ann. §§ 59.1-336, *et seq.*; (3) breach of contract; (4) breach of the duty of loyalty; (5) tortious interference with CORT's contractual relations; (6) tortious interference with CORT's actual and prospective business relations; (7) conversion; (8) violation of the Virginia Computer Crimes Act, Va. Code Ann. §§ 18.2-152, *et seq.*; and (9) conspiracy to engage in the above breaches and violations, and, in support thereof, CORT avers as follows:

## THE PARTIES

1. CORT is a corporation duly organized and incorporated in the State of Delaware, maintaining a principal place of business at 1500 Conference Center Drive, Suite 440, Chantilly, Virginia 20151. CORT is engaged in the business of, among other things, providing furniture

rental services, and selling used home and office furniture, electronics, accessories, and other products at locations throughout the United States. Michael Deutsch, Raymond Naramore, Raman Jasra, Bryce Sheridan, and Brian Joyce, the affiants of the Verified Complaint, have personal knowledge of the facts recited herein and are employed by CORT.

2.      Plaintiff is informed and believes, and on that basis avers, that Defendant All-Business Systems & Design, Inc. ("All-Business") is now, and at all times referenced herein was, a Virginia corporation with its principal place of business in this judicial district at 14221 Willard Road, Suite 1100, Chantilly, Virginia, 22021. All-Business is a competitor of CORT.

3.      Plaintiff is informed and believes, and on that basis avers, that Defendant James Cribb ("Cribb") is now, and at all times referenced herein was, an individual residing in the state of Virginia and is working for All-Business at 14221 Willard Road, Suite 1100, Chantilly, Virginia, 22021. Plaintiff is informed and believes, and on that basis avers, that Defendant Cribb is now, and at all times referenced herein was, the President and Registered Agent of All-Business.

4.      Defendant Brian Markwood ("Markwood") is a former CORT employee who, prior to January 10, 2014, was based in CORT's Chantilly, Virginia location. Markwood resigned from CORT on or about January 10, 2014.

5.      Markwood is a citizen and domiciliary of Virginia last known to reside at 14353 Watery Mountain Court, Centreville, Virginia, 20120.

6.      Plaintiff is informed and believes, and on that basis avers, that Defendant Markwood is now working for All-Business at 14221 Willard Road, Suite 1100, Chantilly, Virginia, 22021.

7.      Upon information and belief, at all times herein mentioned, each Defendant acted individually and/or as the agent, co-conspirator, aider, abettor, joint venturer, alter ego, third-party beneficiary, employee, officer, director, or representative of All-Business and, in doing the things hereinafter averred, acted within the course and scope of such agency, employment or conspiracy and with the consent, permission, and authorization of All-Business. Upon information and belief, all actions of each Defendant as averred in the claims for relief stated herein were ratified and approved by All-Business, or its officers, directors, or managing agents.

### JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that CORT's Verified Complaint includes claims for Defendants' violation of a federal statute, specifically the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C §§ 1030 *et seq.*

9.      Pursuant to 28 U.S.C. § 1367, this Court has subject matter jurisdiction over all remaining claims because the claims are so related to Defendants' violation of a federal statute that they form part of the same case or controversy under Article III of the United States Constitution, and are all part of the same common nucleus of operative facts.

10.     This Court has personal jurisdiction over All-Business because it is a Virginia corporation with its principal place of business within the Eastern District of Virginia and because it harmed CORT in this district by seeking a competitive advantage through wrongful use of CORT's confidential and proprietary information obtained by an employee formerly employed by CORT.

11.     This Court has personal jurisdiction over Cribb because, as a Virginia resident, Cribb is subject to general personal jurisdiction in Virginia.

12.     This Court has personal jurisdiction over Markwood because, as a Virginia resident, Markwood is subject to general personal jurisdiction in Virginia.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, *inter alia*, a substantial part of the events and omissions giving rise to the claims occurred here and because Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

14.     Founded in 1972, CORT provides rental furniture, accessories, and related services. Among other things the company sells used home and office furniture, electronics, accessories, and other products.

15.     Over the past 40 years, CORT's business and its success has been built on trust, goodwill, and client satisfaction. In connection with the development of its business, CORT has expended substantial time, labor, and money to research and develop skills, methods, techniques, plans, programs, processes, data, and forms which, singularly and collectively, constitute trade secrets and confidential information of CORT. To remain a leader in the industry, CORT devotes tremendous resources to strategically develop and maintain a proprietary database of customers, pricing lists, formulae, contact information, marketing and strategic plans, vendor and supplier lists, costs, and financial information, which is crucial to the success of CORT's business and its ability to compete in the marketplace.

16.     CORT's proprietary database is maintained in a software program known as V2. CORT invested a significant amount of financial resources to develop V2 and continues to invest extensive financial resources to maintain the proprietary system. The cost alone to host V2 through Oracle cloud services is approximately $432,000 per year. V2 is CORT's primary business system and how it interacts with customers. Among other things, V2 supports CORT's

customer lists, contacts, inventory, invoicing, leases, pricing, customer revenue information, financial information, profit information, store revenue, customer referral activity, and other highly sensitive confidential information.

17.     Given the competitive nature of CORT's business, where customer lists, pricing information, sales information, and other client information are the bedrock of success, CORT's confidential and proprietary information is among its most valuable assets.

18.     The use of and access to the aforementioned CORT confidential information is a valuable sales tool and if it is misused, a competitor may gain an unfair advantage even though it did not invest the time, money, and/or other resources that CORT did to develop such products and services.  To prevent against such wrongdoing, CORT takes substantial measures and exercises reasonable diligence to prevent this information, which constitutes trade secrets and confidential information, from becoming available to persons other than those authorized by CORT.

19.     CORT requires any employee who is granted access to confidential and trade secret information to sign a contractual agreement with CORT to protect against the compromise of confidential, commercially advantageous, and trade secret information.  This agreement, which is described in greater detail below, contains provisions prohibiting the use of CORT's confidential information other than for the benefit of CORT and requiring the return of all company documents and information upon termination of the employment relationship.

20.     CORT also requests its employees to review and sign various policies, including CORT's Employee Handbook and Information Security policies, requiring that no CORT trade secret, confidential, or proprietary information will be disclosed to any third party and that preserving the confidentiality, integrity, and availability of client information and confidential

data of all forms are core values of CORT. Additionally, CORT employees with access to confidential and trade secret information are instructed that accessing data of which the employee is not an intended recipient or that the employee is not expressly authorized to access, within the scope of his or her regular duties, is strictly prohibited.

21.     Not all CORT employees are provided access to CORT's custom-designed V2 database, and the employees who are granted access must use secure, unique logins to access the database.  In addition, CORT employees are aware that they are only permitted to access portions of the V2 system that are directly related to their specific store locations and customers, and they are not permitted to access information relating to other CORT locations or customers.

## DEFENDANT MARKWOOD'S HISTORY OF EMPLOYMENT WITH CORT

22.     In October 2008, Defendant Markwood accepted an offer of employment with CORT as the Assistant Clearance Center Manager for CORT's Chantilly, Virginia Clearance Center (the "Chantilly Showroom").

23.     In this role, Markwood was responsible for managing and developing direct sales support in the prospecting and sales of CORT's products and services, posting CORT product advertisements on Craigslist, developing customer relationships to increase revenue, and providing inside sales assistance to CORT's corporate customers.  In the geographic area served by the Chantilly Showroom, Markwood served as the first line of contact with corporate customers. However, Markwood's job duties and responsibilities were limited to CORT's Chantilly Showroom.

24.     As a result of the experience, training and knowledge provided by CORT, Markwood developed valuable relationships with CORT's customers and was entrusted with CORT's confidential information and trade secrets, including, without limitation, items such as

pricing lists, customer lists, marketing and financial data, and other information relating to current and prospective customers.

25.     In April 2012, Markwood had a three-week break in employment from CORT. On or around April 13, 2012, Markwood resigned.  Approximately two weeks later, Markwood called District Retail Manager, Michael Deutsch, and asked to resume his employment with CORT.  On or about May 7, 2012, Markwood resumed his employment with CORT with the understanding that everything about his employment remained the same.  Markwood was not required to fill out new employment forms or other personnel forms, and his original hire date, seniority date, benefit seniority date, salary date, and performance date did not change.

26.     On January 2, 2014, Markwood advised CORT that effective January 10, 2014, he was resigning from employment with CORT.

27.     In January 2014, Markwood told supervisor Raymond Naramore that he was leaving CORT to work for the government of Fairfax County, Virginia  in its Procurement Department.

28.     In January 2014, Markwood told Michael Deutsch, District Retail Manager, that he was leaving CORT to work for the government of Fairfax County, Virginia in its Procurement Department.

29.     In January 2014, Markwood told Brian Joyce, Area Manager, that he was leaving CORT to work for the township of Chantilly, Virginia in its Procurement Department.

30.     Markwood is currently employed by All-Business, a competitor of CORT located approximately one mile from the Chantilly Showroom.

## DEFENDANT MARKWOOD'S CONTRACTUAL OBLIGATIONS TO CORT

31.     In order to protect CORT's legitimate business interests, including the goodwill, customer relationships, training, and confidential, proprietary, and trade secret information

provided in trust by CORT to employees, such as Markwood, CORT requires execution of an agreement containing, among other things, confidentiality, non-competition, non-solicitation, and non-disclosure provisions. Among other things, this agreement provides for restrictions against the unauthorized use or disclosure of CORT's customer list and confidential information, as well as the pirating away of CORT's goodwill through the solicitation or diversion of CORT customers and market advantages to or on behalf of any CORT competitor, both during and after the employees' termination of employment.

32. On or around October 28, 2008, in connection with his employment, Markwood signed CORT's Employee Agreement. A true and correct copy of Defendant Markwood's Employee Agreement ("Agreement") is attached as Exhibit "A." The Agreement is one of the primary documents setting forth the terms that governed the employment relationship between Defendant Markwood and CORT.

33. The Agreement signed by Defendant Markwood was agreed to and accepted by him in connection with the commencement of his employment and as a condition of him being given access to confidential information concerning, without limitation, CORT's customers, marketing strategies, data information, prices, and strategies.

34. In his Agreement, Markwood promised that he would maintain the confidentiality of all the confidential, proprietary, and trade secret information, including information concerning CORT's customers, to which he gained access as a CORT employee, and that he would return such information to CORT upon the termination of his employment. Specifically, Markwood agreed as follows:

5. **ACCESS TO CONFIDENTIAL INFORMATION AND NON-DISCLOSURE COVENANT**

Employee agrees always to protect CORT's "Confidential Information." Except as required in work for CORT (as hereinafter defined), Employee shall never (i) modify or threaten to modify, nor (ii) use or threaten to use, or disclose or threaten to disclose, or give or threaten to give to another, any "Confidential Information."

For purposes of this Agreement, the term "Confidential Information" means any information (including, but not limited to, sketches, drawings, designs, written materials, patents, trademarks, reports, data, records, inventions, sales, national or regional marketing strategies, sales or revenues, costs or profits, operating budgets, or suppliers), whether generated internally or externally and regardless of form, that: (a) CORT, as to Competitors (as hereinafter defined) and the public maintains as confidential; (b) relates to the business of CORT (including, but not limited to, the sale, rental and leasing of interior furnishings and related personal property); and (c) derives actual or potential economic value from not being generally known by Competitors or the public. "Confidential Information" also includes any information constituting "trade secrets" under any applicable federal or state law. Whether any particular information is Confidential Information shall be determined as of the time of any actual or threatened disclosure alleged to have been in violation of this Paragraph 5.

For purposes of this Agreement, the terms "Competitor" and "Competitors" refer to a business, or businesses, engaged, in whole or in part, in the sale, rental and/or leasing of interior furnishings and related personal property in competition with any interior furnishing or related personal property sold, rented and/or leased by CORT. For purposes of this Agreement, whether any business is a Competitor shall be determined as of the time of the act or acts alleged to have been in a violation of a covenant contained in this Agreement.

. . .

Employee agrees not to disclose or use trade secret information for as long as such information constitutes a trade secret under applicable federal and state law. Employee agrees not to disclose or use all other Confidential Information under this Agreement for a period of two (2) years following the termination for any reason of Employee's employment.

Employee agrees to return all property of CORT immediately upon termination of employment for any reason, including any computer, computer disks, documents of any kind, Confidential Information in any form, files, notes, recordings and business records of any kind. Employee also agrees that all copies of any documents or computer disks will be returned to CORT and Employee promises not to retain copies of any property returned.

*See* Exhibit "A" at ¶ 5.

35.     To protect against the unfair use of CORT's goodwill or the confidential information acquired by Markwood, he specifically agreed as follows regarding his covenant not to compete:

### 6.    COVENANT NOT TO COMPETE

In addition to the Employee's access to Confidential Information in and during the course of his/her employment, **Employee further recognizes and acknowledges that he/she will develop valuable relations with customers or potential customers of CORT based in whole or in part upon the reputation and goodwill which CORT has developed over the years.** Employee further recognizes and acknowledges that he/she will receive intimate knowledge of and establish a special rapport with CORT's customers, and will develop valuable Confidential Information concerning CORT's overall business, including (without limitation) information concerning or relating to CORT's market activities, sales levels, profitability, operating budgets, exclusive customer lists, suppliers and resources, business plans, marketing strategies, expansion plans, management talent, and other confidential business conditions and strategies, which, if made available to any Competitor would provide to such a Competitor an unfair business advantage against CORT.

**As a consequence, for a period of twelve (12) months following termination of his/her employment with CORT for any reason, Employee shall not hold any position with or perform any service for a Competitor in the Territory (as hereinafter defined) that is the same as or substantially similar to anything that comprised a material part of Employee's work for CORT at anytime during Employee's last twelve (12) months of employment with CORT; provided, however, that nothing in this Paragraph shall preclude Employee from working for a Competitor in a capacity that does not involve the exercise of substantially the same level of skill, effort and responsibility with Employee's work for CORT involved during his/her last twelve (12) months of employment with CORT.**

For purposes of this Paragraph and this Agreement, the terms "Competitor" and "Competitors" refer to a business, or businesses, engaged, in whole or in part, in the sale, rental and/or leasing of interior furnishings and related personal property in competition with any interior furnishing or related personal property sold, rented and/or leased by CORT. For purposes of this Agreement, whether any business is a Competitor shall be determined as of the time of the act or acts alleged to have been in violation of a covenant contained in this Agreement.
**For purposes of this Paragraph and this Agreement, the term "Territory" means any geographic area(s) of responsibility to which Employee was assigned for at least six (6) months during the eighteen (18) months immediately preceding the termination of his/her employment with CORT for any reason.**

*See* Exhibit "A" at ¶ 6 (emphasis added).

36.     Defendant Markwood also agreed as follows with respect to the removal of

CORT property from CORT's premises:

**7.     USE     AND     CONTROL     OF     OTHER     PROPRIETARY
INFORMATION AND RESOURCES**

**All proprietary information, and all files, records, documents, drawing,
specifications, equipment, computer files, computer records, computer
programs, and similar items relating to the business of CORT, whether they
are prepared by Employee or come into Employee's possession in any other
way and whether or not they contain or constitute trade secrets owned by
CORT, are and shall remain the exclusive property of CORT and shall not
be removed from the premises of CORT,** or reproduced or distributed in any
manner, under any circumstances whatsoever except as may be necessary in the
ordinary course of performing Employee's job duties for CORT.

*See* Exhibit "A," at ¶ 7 (emphasis added).

37.     To protect against the unlawful disclosure, dissemination, and retention of

CORT's confidential information Markwood had access to by virtue of his employment with

CORT, Defendant Markwood agreed that immediately upon the termination of his employment,

he would return the following materials to CORT:

**11.     RETURN OF MATERIALS**

**Immediately upon the termination of Employee's employment with CORT,
whether with or without cause, Employee shall return to CORT, and will not
take, keep, recreate, or deliver to anyone else, or allow any third party to
take, keep, recreate, or deliver to anyone else, (i) any and all Confidential
Information, and (ii) all copies, photographs, reports, summaries, lists, and
reproductions of any Confidential Information,** and all devices and equipment
capable of storing Confidential Information, including without limitation,
computer diskettes. Notwithstanding the generality of the foregoing sentence, in
the event any Confidential Information is stored or otherwise kept in or on a
computer hard drive or other storage owned by or otherwise in the possession or
control of Employee (collectively, "Employee Storage Device"), Employee
covenants, following the return of all Confidential Information to CORT, to
permanently and completely erase and destroy all electronic files and other

repositories of Confidential Information stored or kept in or on any Employee Storage Device.

*See* Exhibit "A" at ¶ 11 (emphasis added).

38.     Defendant Markwood also agreed as follows with respect to CORT customers:

**14.     NON-SOLICITATION OF CUSTOMERS**

**Employee further covenants and agrees that for a period of twelve (12) months following the termination of his/her employment with CORT for any reason, he/she will not contact, within the Territory, subject to change at CORT's discretion (as hereinafter defined) he/she was employed by CORT, any Protected Customer (as hereinafter defined) for the purpose of renting, leasing or selling to such Protected Customer any interior furnishings and/or related personal property that at the time is competitive with any interior furnishings and/or related personal property then being offered for rental, lease, or sale by CORT.**

For purposes of this Agreement, the term "Territory" means the geographic area(s) of responsibility to which Employee was assigned, at CORT's discretion, for at least six (6) months during the eighteen (18) months immediately preceding the termination of his/her employment with CORT for any reason. Further the term "Protected Customer" means a customer of CORT with whom Employee dealt on behalf of CORT at anytime during the last twelve (12) months of his/her employment with CORT. Whether any individual or business is a Protected Customer shall be determined as of the time of any contact by Employee that is alleged to have been in violation of this Paragraph 14.

*See* Exhibit "A" at ¶ 14 (emphasis added).

39.     Defendant Markwood specifically acknowledged and agreed that any violation of his obligations would result in irreparable harm to CORT and that CORT would be entitled to obtain an injunction enjoining him from violating the covenants contained in his Agreement:

**18.     INJUNCTIVE RELIEF**

Employee acknowledges that the violation of the covenants contained in this Agreement would be detrimental and cause irreparable injury to CORT, which could not be compensated by money damages alone. **Employee agrees that an injunction from a court of competent jurisdiction is the appropriate remedy for these provisions, and he/she consents to the entry of an appropriate judgment enjoining him/her from violating these provisions in the event there is a finding of their breach.**

*See* Exhibit "A" at ¶ 18 (emphasis added).

40.     Finally, Defendant Markwood agreed to pay the reasonable attorneys' fees that CORT incurred in the event it became necessary for CORT to institute a lawsuit against Markwood (as it has here) in connection with Markwood's violation of the terms of his Agreement:

### 16.   TOLLING PERIOD AND LEGAL COSTS

In the event the Employee breaches any of the covenants contained herein and CORT seeks compliance with those covenants by judicial proceedings, the time periods during which Employee is restricted by said covenants shall be extended by the time during which the Employee is found by a court of competent jurisdiction to have been in breach of said covenants, not to exceed two (2) years. **In the event such judicial proceedings prevail in favor of CORT, Employee shall pay all of CORT's costs, including but not limited to reasonable legal fees associated with CORT's enforcement of said covenant.**

*See* Exhibit "A" at ¶ 16 (emphasis added).

41.     As set forth above, CORT provided valuable consideration to Markwood for the contractual promises to which he agreed and CORT has satisfied all conditions precedent.

42.     In addition to his Agreement, Markwood was employed under the condition that he abide by CORT's Employee Handbook provisions, which likewise require strict confidentiality of CORT's trade secrets, financials, training manuals and materials, policy manuals, customer lists, and pricing information.   A true and correct copy of the Acknowledgement of Receipt and Agreement of Employee Handbook signed by Markwood on July 31, 2009 is attached as Exhibit "B."

43.     Defendant Markwood also received CORT's "Computer Use and Electronic Communications" policy, which expressly prohibits employees from disclosing CORT's confidential information to any and all unauthorized individuals.   A true and correct copy of the

Acknowledgment of Receipt and Agreement and the Computer Use and Electronic Communications Policies and Procedures signed by Markwood on August 20, 2010 is attached as Exhibit "C."

44.     Markwood also received training on CORT's Information Security policies on at least two occasions.  Prior to being granted access to CORT's confidential and trade secret information, Markwood reviewed and acknowledged CORT's Information Security policies.  A true and correct copy of the Acknowledgment of Receipt and Agreement of Information Security Policies and Procedures signed by Markwood on October 29, 2008 is attached as Exhibit "D."

45.     On December 20, 2013, Markwood received additional training on CORT's Information Security policies and procedures.  A true and correct copy of Markwood's Halogen Training Page is attached as Exhibit "E."

46.     CORT's Information Security policies and procedures, require, among other things, strict confidentiality of CORT's confidential and trade secret information, and authorized access to CORT's confidential, proprietary, and trade secret information.  In pertinent part, the Information Security policy provides as follows:

**Policy Statement from the President**
Preserving the confidentiality, integrity and availability of client information and confidential data of all forms are core values of this organization, and CORT is committed to safeguarding our most valuable assets.  All employees, consultants, temporary personnel, or others who have access to CORT information have an obligation to protect it from unauthorized access, modification, disclosure, and destruction, whether accidental or intentional in nature.

**Unacceptable Use**
The following activities are **strictly prohibited**, with no exceptions:
. . .

Effecting security breaches or disruptions of network communication. Security breaches include, but are not limited to, accessing data of which the employee is not an intended recipient or logging into a server or account that the employee is not expressly authorized to access, unless these duties are within the scope of regular duties.

A copy of CORT's Information Security policy is attached as Exhibit "F."

## DEFENDANT ALL-BUSINESS'S, CRIBB'S, AND MARKWOOD'S VIOLATION OF CORT'S RIGHTS

47.     On or around January 2, 2014, Defendant Markwood notified CORT that he was resigning effective January 10, 2014.

48.     Despite telling several CORT employees that he was leaving CORT to work for the government, Markwood is currently employed by All-Business, a direct competitor of CORT.

49.     Upon information and belief, Markwood received and accepted an offer of employment from All-Business on or before December 16, 2013.

50.     On or about December 16, 2013, Markwood downloaded and saved to his CORT-issued computer a "Beneficiary Designation Form" and an "Employee Deferral Election" form for All-Business Systems & Design's 401(k) P/S Plan.

51.     Upon information and belief, from December 2013 until January 10, 2014, while still employed by CORT, Markwood impermissibly accessed CORT's computer systems and downloaded, printed and/or uploaded to his personal cloud-based SkyDrive account, numerous CORT files containing confidential, proprietary, and trade secret information, without CORT's knowledge or authorization.

52.     Upon information and belief, to access this information, Markwood improperly used his login credentials to access CORT's V2 database to obtain information that he was not authorized to access.  Upon information and belief, the data Markwood accessed, without

authorization, included customer information, sales figures, profit margins, revenue, and other financial information for CORT's Alexandria, Virginia; Rockville, Maryland; Capitol Heights, Maryland; and Catonsville, Maryland stores.

53.     From December 2013 until January 10, 2014, Markwood impermissibly accessed CORT's computer systems to obtain confidential, proprietary and trade secret information that he was not authorized to access on a variety of occasions, including, but not limited to, the following:

- On December 8, 2013, at 1:16 p.m., Markwood impermissibly accessed CORT's V2 database and downloaded to his CORT-issued computer a sales report for CORT's Chantilly, Virginia; Alexandria, Virginia; Rockville, Maryland; Capitol Heights, Maryland; and Catonsville, Maryland stores. As part of his regular duties, Markwood was only authorized to access this report for the Chantilly, Virginia location, not CORT's other stores.
- On December 16, 2013, on two separate occasions at 10:05 a.m. and 10:55 a.m., Markwood impermissibly accessed CORT's V2 database and downloaded to his CORT-issued computer two sales report for CORT's Chantilly, Virginia; Alexandria, Virginia; Rockville, Maryland; Capitol Heights, Maryland; and Catonsville, Maryland stores. As part of his regular duties, Markwood was only authorized to access this report for the Chantilly, Virginia location, not CORT's other stores.
- On December 24, 2013, on two separate occasions at 10:08 a.m. and 10:12 a.m., Markwood impermissibly accessed CORT's V2 database and downloaded to his CORT-issued computer two sales report for CORT's Chantilly, Virginia; Alexandria, Virginia; Rockville, Maryland; Capitol Heights, Maryland; and Catonsville, Maryland stores. As part of his regular duties, Markwood was only authorized to access this report for the Chantilly, Virginia location, not CORT's other stores.
- On December 27, 2013, at 4:30 p.m., Markwood impermissibly accessed CORT's V2 database and downloaded to his CORT-issued computer a sales report for CORT's Chantilly, Virginia; Alexandria, Virginia; Rockville, Maryland; Capitol Heights, Maryland; and Catonsville, Maryland stores. As part of his regular duties, Markwood was only authorized to access this report for the Chantilly, Virginia location, not CORT's other stores.

54.     Because Markwood's job duties were limited to the Chantilly Showroom, Markwood had no legitimate business reason to access information about CORT's Alexandria, Virginia; Rockville, Maryland; Capitol Heights, Maryland; and Catonsville, Maryland stores,

and he was not engaged in any work related activities on behalf of CORT which would have required him to access such information.

55.     Upon information and belief, after downloading, impermissibly accessing, and retaining the information from V2 to his CORT computer, Markwood printed approximately 100-300 pages of documents containing highly sensitive and confidential information related to CORT's Chantilly, Virginia; Alexandria, Virginia; Rockville, Maryland; Capitol Heights, Maryland; and Catonsville, Maryland stores. Markwood then removed these documents from CORT's premises and did not return them upon termination of his employment with CORT.

56.     In the weeks leading up to Markwood's resignation, CORT Sales Representative Raman ("Sunny") Jasra witnessed Markwood print a great quantity of documents from his CORT computer. According to Sunny's eyewitness account, the documents Markwood printed contained customer information, pricing information, sales, revenues, costs, and profits margins.

57.     CORT cannot determine the full scope of the documents Markwood misappropriated, but through a preliminary forensic analysis, it is apparent that he accessed, downloaded, printed, transferred, and/or otherwise copied numerous files containing CORT information, including confidential proprietary, and trade secret information that Markwood was not authorized to access, pursuant to CORT's Information Security policies and procedures.

58.     After his departure, CORT accessed Markwood's CORT computer and determined that almost all of Markwood's computer files, icons, file information, and emails were deleted by Markwood before he resigned.

59.     As of February 3, 2014, Markwood stated on his LinkedIn business networking profile that he is employed as a Consultant for All-Business. A true and correct copy Markwood's LinkedIn Profile is attached as Exhibit "G."

60. Markwood's public posting of his LinkedIn Profile is an improper solicitation in violation of Markwood's Agreement with CORT.

61. The services Markwood performs for All-Business are the same or substantially similar to the services he provided for CORT, and Markwood is actively representing All-Business and actively soliciting CORT customers on behalf of All-Business and/or Cribb.

62. The documents Markwood downloaded and/or accessed, and failed to return to CORT, were prepared by CORT at CORT's expense. This compilation of information gives CORT an advantage over its competitors. In the hands of a competitor – such as All-Business - this advantage can and will result in a loss to CORT of its customer goodwill, confidential, proprietary, and trade secret information, and business.

63. Upon information and belief, Defendant Markwood and Defendants All-Business and/or Cribb have specifically identified, targeted, solicited, and diverted, for the benefit of All-Business and/or Cribb, and with and through the use and disclosure of CORT's confidential and trade secret records and data and/or the information contained therein, the business of customers with whom Defendant Markwood dealt on behalf of CORT during the last twelve (12) months of his employment with CORT.

64. Environmental Consulting Services, Inc. ("ECS") is one of CORT's Chantilly Showroom's major corporate accounts for which Defendant Markwood was responsible and with whom Markwood dealt on behalf of CORT during the last twelve (12) months of his employment with CORT. ECS consistently places orders with CORT and, during his employment, dealt almost exclusively with Markwood.

65.    In the week prior to his resignation, Markwood met with ECS, on behalf of CORT, concerning a furniture order for a sofa and two chairs. At the time of Markwood's departure from CORT, Markwood had submitted a proposal to ECS.

66.    ECS did not place the order with CORT. When Raymond Naramore followed up with ECS about the proposal, ECS said that it decided to place the order with another company. Based on these circumstances, CORT believes, and therefore avers, that Markwood diverted ECS away from CORT and completed the order on behalf of All-Business and/or Cribb.

67.    Since Markwood's resignation, ECS has not placed any orders with CORT or inquired about Markwood's whereabouts.

68.    Ellumen, Inc. is another major corporate account at the Chantilly Showroom for which Defendant Markwood was responsible and with whom Markwood dealt on behalf of CORT during the last twelve (12) months of his employment with CORT.

69.    After his departure, CORT discovered and recovered deleted email correspondence between Ellumen, Inc. and Markwood. Based on the correspondence, prior to his resignation, Markwood was actively preparing and fine tuning a proposal for Ellumen, Inc., worth approximately $17,000 to $18,000, for the installation of office cubicles. Upon information and belief, Markwood did not inform his supervisor Raymond Naramore or anyone else at CORT about this proposal.

70.    CORT believes, and therefore avers, that Defendant Markwood never intended to complete the order for Ellumen, Inc. on behalf of CORT, but rather planned to and did complete the order on behalf of All-Business.

71.    CORT believes, and therefore avers, that Defendants Markwood, All-Business, and/or Cribb conspired with one another to: (a) injure, impair, and/or destroy CORT's ability to

maintain the continuity of its relations with current and prospective customers; target, solicit, and divert customers and prospective customers of CORT to Defendants All-Business and/or Cribb; (c) use, rely upon, take advantage of, and otherwise misappropriate the confidential CORT customer, pricing, and financial information acquired by Markwood during his employment at CORT; (d) disrupt CORT's business operations by diverting the patronage and business of CORT customers for the benefit of Defendants All-Business and/or Cribb; and (e) otherwise attempt to divert the customers and business of CORT to Defendants All-Business and/or Cribb in breach of, or by interfering with, CORT's contractual, trade secret, duty of loyalty, unfair competition, and other statutory and common law rights.

72.     Upon information and belief, Defendants have solicited numerous customers with whom Markwood dealt on behalf of CORT during the last twelve (12) months of his employment with CORT.

73.     Upon information and belief, Defendants have procured several sales from customers with whom Markwood dealt on behalf of CORT during the last twelve (12) months of his employment with CORT.

74.     Upon information and belief, Defendants Markwood, All-Business, and/or Cribb have used, and are using, CORT's confidential and trade secret information for their own benefit to the detriment of CORT.

75.     Upon information and belief, Defendant Cribb was involved with the recruitment and hiring of Defendant Markwood from CORT.  Additionally, upon information and belief, Defendant Cribb planned for, condoned and/or approved of Defendant Markwood's misappropriation of CORT's trade secrets and confidential information, to the detriment of CORT.

76.    Upon information and belief, Defendants All-Business and/or Cribb acquired CORT's trade secrets and confidential information with knowledge or reason to know that such trade secrets and confidential information were acquired by improper means.

77.    By letter dated February 5, 2014, CORT reminded Defendant Markwood of his contractual obligations pursuant to the terms of the Agreement, and CORT informed him that he must immediately return any trade secrets and confidential information that remained in his possession. *See* Letter to Defendant Markwood dated February 5, 2014, attached as Exhibit "H."

78.    In its Letter, CORT requested that Defendant Markwood provide CORT with clear and unambiguous assurances that he was not engaging in conduct that violated the Agreement and applicable laws.  Defendant Markwood failed to provide CORT with such an assurance and failed to provide any response whatsoever to CORT's letters.

79.    Upon information and belief, during his employment with All-Business, Defendant Markwood has used CORT's trade secrets and confidential information to solicit CORT's current and prospective customers, to the detriment of CORT.

80.    Upon information and belief, Defendants All-Business and/or Cribb planned for, condoned and/or approved of Defendant Markwood's misappropriation of CORT's trade secrets and confidential information, to the detriment of CORT.

## CLAIMS FOR RELIEF

### COUNT I
### Violation Of The Federal Computer Fraud And Abuse Act, 18 U.S.C. §§ 1030, *et seq.* – Against All Defendants

81.    CORT incorporates and re-alleges the allegations contained in paragraphs 1 through 80 above as if fully set forth herein.

82.     Pursuant to, 18 U.S.C. §§ 1030(g), 1030(c)(4)(A)(i)(I), any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator when damages or losses meet or exceed $5,000 in one year.

83.     Defendant Markwood, with, upon information and belief, the knowledge and encouragement of Defendants All-Business and/or Cribb, intentionally exceeded his authorized accessed to CORT's computer systems and obtained confidential, proprietary, and trade secret information that he was not entitled to obtain in direct violation of 18 U.S.C. § 1030(e)(6).

84.     Defendant Markwood's authorized access to CORT's computer systems ceased when he used such access to obtain confidential, proprietary, and trade secret information about other CORT stores located in Alexandria, Virginia; Rockville, Maryland; Capitol Heights, Maryland; and Catonsville, Maryland.  Markwood was only authorized by CORT to obtain such information for the Chantilly, Virginia location.

85.     Defendant Markwood's unauthorized access, use, and transmission of this information exceeded Markwood's authorized access, and was detrimental and harmful to CORT.

86.     The computer and computer systems intentionally accessed and used by Defendant Markwood were "protected computers" within the meaning of 10 U.S.C. §§ 1030 *et seq.* because they were used in interstate commerce and communication, including for communicating and maintaining information regarding numerous customers and/or customer information with which CORT was engaged in interstate commerce.

87.     Defendant Markwood was, upon information and belief, acting as an agent for Defendants All-Business and/or Cribb at the time he, without authorization, accessed and used

CORT's computer and downloaded, retained, and/or distributed information from CORT's computer database to Defendants All-Business and/or Cribb.

88.    Upon information and belief, Defendants All-Business and/or Cribb knowingly and intentionally received confidential CORT database information that was impermissibly downloaded by Markwood and which Markwood was prohibited from accessing.

89.    Defendants' actions were intentional and were taken deliberately, maliciously, wantonly, with reckless and deliberate disregard for CORT's lawful rights, and without privilege or justification.

90.    Defendant Markwood's unauthorized access and use of CORT's computer and computer systems for the purposes of taking and transmitting confidential information that Markwood was prohibited from accessing has caused and will cause CORT economic damages and loss aggregating substantially more than $5,000 during a one-year period.

91.    Unless enjoined, Defendants will continue to violate the CFAA. CORT has no adequate remedy at law for some or all of such damage.

## COUNT II
### Violation of the Virginia's Uniform Trade Secrets Act, Va. Code Ann. §59.1336 *et seq.* – Against All Defendants

92.    CORT incorporates and re-alleges the allegations contained in paragraphs 1 through 91 above as if fully set forth herein.

93.    Defendant Markwood with, upon information and belief, Defendants All-Business's and/or Cribb's knowledge or encouragement, willfully, maliciously and intentionally misappropriated CORT's trade secrets by improper means.

94.    CORT's compilations of customer data, sales processes, pricing information, financial cost structure and related information constitute trade secrets as such term is defined

under the Virginia Uniform Trade Secrets Act, in that it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use. CORT spent significant sums of money to create, safeguard and enhance the trade secrets. CORT used and uses efforts that are reasonable under the circumstances to maintain the secrecy of the trade secrets.

95.     Markwood willfully and maliciously misappropriated the trade secrets for his own benefit and for the benefit of All-Business and/or Cribb, without CORT's authorization, and without a right or privilege to do so to the detriment of CORT.

96.     CORT's trade secrets were disclosed to Markwood while in a confidential relationship with CORT. Defendants Markwood, All-Business, and/or Cribb's use of said trade secrets are causing injury to CORT.

97.     Upon information and belief, All-Business and/or Cribb acquired CORT's trade secrets from Markwood.

98.     Upon information and belief, All-Business and/or Cribb knew or had reason to know that Markwood acquired CORT's trade secrets through improper means, and that Markwood owed a duty to CORT to maintain the secrecy and limit the use of those trade secrets.

99.     Upon information and belief, All-Business and/or Cribb are wrongfully using CORT's trade secrets and have converted and wrongfully appropriated for their own use such proprietary information and trade secrets.

100.     As a result of Defendants' misappropriation of its trade secrets, CORT has been damaged in an amount to be proven at trial, and it additionally has suffered and will continue to

suffer immediate irreparable harm that is not compensable by money damages and that may only be remedied by injunctive relief.

101.    Unless Defendants are restrained by this Court from continuing to misappropriate and use the trade secrets of CORT, Plaintiff will suffer immediate, substantial, and irreparable injury.

102.    The benefits to CORT in obtaining injunctive relief are equal to or outweigh the potential harm which Defendants would incur if this Court grants the requested injunctive relief.

103.    The public interest is best served by granting the injunction.

## COUNT III
### Breach of Contract – Against Defendant Markwood

104.    CORT incorporates and re-alleges the allegations contained in paragraphs 1 through 103 above as if fully set forth herein.

105.    Upon information and belief, Markwood breached the Employee Agreement by: (a) Disclosing and/or using CORT's Confidential Information other than on behalf of CORT within two years of the termination of his employment with CORT; (b) Within twelve (12) months of termination of his employment with CORT, directly or indirectly soliciting or attempting to solicit business from CORT's customers with whom he dealt on behalf of CORT at anytime during the last twelve (12) months of his employment with CORT for purposes of providing products or services offered by All-Business, CORT's competitor; (c) Failing to devote his full business time and attention to the duties assigned to him by engaging in actions against the best interests of CORT and competing with the business efforts devoted on behalf of CORT; (d) Holding, within twelve (12) months following his termination of employment with CORT, a position with or performing a service for All-Business, CORT's competitor; and (e)

Failing to return all of CORT's property and documents, including, but not limited to, CORT's Confidential Information, upon separation from employment with CORT.

106.    As a result of the foregoing breaches of the Employee Agreement, CORT has been damaged in an amount to be proven at trial, and it additionally has suffered and will continue to suffer irreparable harm that is not compensable by money damages and that will only be remedied by injunctive relief.

## COUNT IV
### Breach of Duty of Loyalty – Against Defendant Markwood

107.    CORT incorporates and re-alleges the allegations contained in paragraphs 1 through 106 above as if fully set forth herein.

108.    As an employee of CORT and by virtue of his access to CORT's confidential and sensitive information and trade secrets, Markwood owed a duty of loyalty to Plaintiff CORT.

109.    Defendant Markwood breached his duty of loyalty to CORT by soliciting CORT's customers during his employment, and misappropriating CORT property to do so, and by secretly performing services to CORT customers for the benefit of himself and Defendants All-Business and/or Cribb.

110.    As a CORT employee entrusted with CORT's confidential and proprietary information and with the authority to bind the company to agreements with its customers, Markwood was an agent of CORT and owed CORT fiduciary duties of loyalty and honesty.

111.    Plaintiff CORT has suffered damages, and continues to suffer damages, as a result of Markwood's breach of his duty of loyalty, including but not limited to lost profits and loss of good will.

## COUNT V
### Tortious Interference with Contractual Relations –
### Against Defendants All-Business and Cribb

112.    CORT incorporates and re-alleges the allegations contained in paragraphs 1 through 111 above as if fully set forth herein.

113.    Through the Employee Agreement, CORT had a valid contractual relationship with Markwood.

114.    Upon information and belief, by hiring Markwood, All-Business and Cribb induced Markwood to breach the Employee Agreement.

115.    All-Business and Cribb are strangers to the contractual relationship between CORT and Markwood and to the business relationship giving rise to and underpinning the Employee Agreement.

116.    Upon information and belief, in inducing Markwood to breach his contract with CORT, All-Business and Cribb acted improperly and without privileged.

117.    Upon information and belief, in inducing Markwood to breach his contract with CORT, All-Business and Cribb acted purposefully and maliciously with the intent to injure CORT.

118.    As a result of All-Business's and Cribb's inducement of Markwood's breaches of contract, CORT has been damaged in an amount to be proven at trial, and it additionally has suffered and will continue to suffer irreparable harm that is not compensable by money damages and that may only be remedied by injunctive relief.

## COUNT VI
### Tortious Interference with Business Relations – Against All Defendants

119.    CORT incorporates and re-alleges the allegations contained in paragraphs 1 through 118 above as if fully set forth herein.

- 27 -

120.    Plaintiff CORT had business relationships with its customers and a reasonable business expectancy of continuing such business relationships. CORT also had a reasonable business expectancy that Defendants would not attempt to divert customers from CORT either during or immediately following the termination of Defendant Markwood's employment.

121.    Defendants were aware of the relationships that CORT had with its customers.

122.    Despite such knowledge, Defendants intentionally, maliciously, and improperly interfered with this business expectancy by personally soliciting such customers to cease its business with CORT and to have the same or similar services be provided directly by Defendant All-Business for the benefit of Defendants, and doing so through the misappropriation of CORT's property.

123.    This tortious interference has resulted in substantial damages to CORT, including but not limited to lost profits and loss of good will.

124.    Defendants will likely continue this tortious interference unless this Court prohibits them from doing so. CORT is without adequate remedy at law, and is threatened with irreparable loss, injury and damage. CORT is entitled to actual and exemplary damages, and interlocutory and permanent injunctive relief against Defendants.

### COUNT VII
### Conversion – Against All Defendants

125.    CORT incorporates and re-alleges the allegations contained in paragraphs 1 through 124 above as if fully set forth herein.

126.    CORT owns and is entitled to possession of its confidential and proprietary information.

127.    Upon information and belief, Defendants are in possession of confidential and proprietary information belonging to CORT, and without authorization have assumed and

exercised ownership over such information to the exclusion of CORT's rights and have used such information for their own benefit.

128.    The actions of Defendants constitute a conversion of CORT's confidential and proprietary information.

129.    CORT has suffered actual damages as a direct and proximate result of the actions of Defendants is entitled to recover such damages from Defendants.

130.    Because the actions of Defendants were reckless, willful and wanton, CORT is also entitled to an award of punitive damages.

131.    As a result of Defendants' conduct described herein, CORT has been damaged in an amount to be proven at trial, and it additionally has suffered and will continue to suffer irreparable harm that is not compensable by money damages and that may only be remedied by injunctive relief.

## COUNT VIII
### Violation of the Virginia Computer Crimes Act – Against Defendant Markwood

132.    CORT incorporates and re-alleges the allegations contained in paragraphs 1 through 131 above as if fully set forth herein.

133.    Markwood used CORT's computer system to make unauthorized copies of CORT's confidential, proprietary and trade secret documents and in doing so violated the Virginia Computer Crimes Act.

134.    As a direct and proximate result of the wrongful actions of Markwood, CORT has been caused to suffer damages, and has incurred costs of this suit including attorneys' fees.

## COUNT IX
### Civil Conspiracy – Against All Defendants

135.    CORT incorporates and re-alleges the allegations contained in paragraphs 1 through 134 above as if fully set forth herein.

136.    Upon information and belief, All-Business, Cribb, and Markwood and others, including certain principals and officers of All-Business, have acted in combination with each other to further a conspiracy against CORT.

137.    In particular, All-Business, Cribb, Markwood, and others, upon information and belief, have committed the following acts, in addition to the wrongful acts described herein, in furtherance of the conspiracy: (a) All-Business, Cribb, Markwood, and others, upon information and belief, contrived a plan and acted in concert to disrupt the business operations of CORT; (b) All-Business, Cribb, Markwood, and others, upon information and belief, contrived a plan and acted in concert to misappropriate the confidential and proprietary information of CORT; (c) All-Business, Cribb, Markwood, and others, upon information and belief, acted in concert to sabotage CORT's ability to perform its existing contractual obligations and to pursue new work with clients; (d) All-Business, Cribb, Markwood, and others, upon information and belief, acted in concert with others in performing some or all of the wrongful acts alleged in this Verified Complaint; and/or (e) other acts that may be discovered during these proceedings.

138.    The purpose of this conspiracy was to injure CORT and to benefit All-Business, Cribb, Markwood, and All-Business's principals and officers.

139.    CORT has suffered damages as a direct and proximate result of the aforesaid conspiracy and is entitled to recover such damages against Defendants.

**COUNT X**
**INJUNCTION – Against All Defendants**

140.    CORT incorporates and re-alleges, as if fully set forth herein, the allegations of Paragraphs 1 through 139 above.

141.    By going to work for All-Business, a direct competitor of CORT, and soliciting the rental or sale of furnishings in the same geographic area for All-Business, and by soliciting

CORT customers with whom he previously dealt on behalf of CORT for the benefit of All-Business and/or Cribb, Defendant Markwood is in material breach of the Agreement.

142.    By employing Markwood to rent or sell furnishings in the same geographic territory in which he worked for CORT, and in inducing, acquiescing in and/or benefiting from Markwood's solicitation of CORT customers with whom he had dealings while he worked for CORT, its knowledge of Markwood's contractual obligations to CORT notwithstanding, All-Business and/or Cribb is tortiously interfering with CORT's business relationships.

143.    During his employment with CORT, Defendant Markwood misappropriated confidential and proprietary information and trade secrets belonging to CORT.   Upon information and belief, Defendants All-Business and/or Cribb planned for, condoned and/or approved of Defendant Markwood's misappropriation of CORT's trade secrets and confidential information.  Additionally, upon information and belief, Defendants All-Business and/or Cribb acquired CORT's trade secrets and confidential information with knowledge or reason to know that such trade secrets and confidential information were acquired by improper means.

144.    Upon information and belief, during his employment with All-Business, Defendant Markwood has used CORT's trade secrets and confidential information to solicit CORT's current and prospective customers.

145.    The actions of Defendants are in violation of Virginia's Uniform Trade Secrets Act.

146.    CORT is without an adequate remedy at law.

147.    CORT has and continues to suffer irreparable harm as a direct result of Markwood's breach of the Agreement, All-Business's conduct, and the actions of all Defendants in misappropriating CORT's trade secrets and confidential information.

WHEREFORE, CORT respectfully prays that this Court enter judgment in favor of CORT and against Defendants as follows:

1. For an Order requiring Defendants to show cause why they should not be enjoined as set forth herein;

2. For a Preliminary and Permanent Injunction:

(A) ordering Defendant Markwood and his current employer, Defendant All-Business, from unfairly competing with CORT by trading on the reputation and goodwill CORT has developed over the years, specifically prohibiting Markwood from:

(i) calling on customers and potential customers on behalf of All-Business, or any of CORT's competitors, in the specific geographic area in which Markwood worked for CORT;

(ii) soliciting CORT customers with whom Markwood dealt on behalf of CORT for the purpose of renting or selling furnishings or related personal property or providing services competitive with the products or services being offered by CORT from All-Business; and

(iii) contacting or communicating with any current CORT employee for the purpose of enticing or encouraging them to leave their employment with CORT.

(B) ordering Defendants immediately to return to CORT all data, whether in electronic or paper form, that constitutes CORT confidential and proprietary information and/or trade secrets, including without limitation: (i) CORT pricing lists; (ii) CORT customer lists; and (iii) CORT financial data.

(C) ordering Defendants and all persons or entities acting by or under their authority or in privity or concert with them immediately to preserve all evidence relating to the matters described in this Complaint, including all documents and data in paper or electronic form;

(D) ordering Defendants to permit a representative of CORT to immediately make mirror copies of any and all hard drives from computers on which Defendant Markwood has been working since his employment with All-Business, including, without limitation, any personal computers or computers belonging to them and All-Business;

(E)   enjoining and restraining Defendants, and all persons or entities acting by or under their authority or in privity or concert with them, from using, transferring, copying, or disclosing to third parties any data that constitutes CORT confidential and proprietary information and/or trade secrets; and

(F)   ordering Defendants to execute affidavits verifying under oath that all data in whatever form relating to CORT's trade secrets and confidential information that were in their possession, custody, or control have been returned to CORT.

3.   For actual damages in an amount to be determined at trial;

4.   For exemplary and punitive damages;

5.   For reasonable attorney's fees and costs;

6.   For costs of suit incurred herein; and

7.   For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

CORT hereby demands a jury trial on all issues so triable.

DATED: March 27ᵗʰ, 2014.

DUANE MORRIS LLP

By: _____
   John R. Gibson
   Virginia Bar No. 72968
   jrgibson@duanemorris.com
   Joseph A. Ciucci
   Georgia Bar No. 170109
   *Pro Hac Vice Application Pending*
   jciucci@duanemorris.com
   Adam C. Keating
   Georgia Bar No. 202672
   *Pro Hac Vice Application Pending*
   akeating@duanemorris.com
   1075 Peachtree Street NE, Suite 2000
   Atlanta, GA 30309-3929
   Telephone: 404-253-6900
   Fax: 404-253-6901

   *Attorneys for Plaintiff*